# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TAUREAN XAVIER PROCH,            )
                                 )
        Plaintiff,          )
                                 )
v.                               )
                                 )          Case No. 14-3021
D. BAKER, et al.,                )
        Defendants.         )
                                 )

## MEMORANDUM AND ORDER

Plaintiff Taurean Proch, a former federal inmate proceeding pro se, filed this case against the Bureau of Prisons ("BOP") and ten prison officials, claiming that they violated his constitutional rights in a number of ways: (1) seizure, destruction, and/or theft of his personal and intellectual property; (2) denial of due process and access to the courts; (3) harassment and retaliation for seeking administrative remedies; (4) infliction of cruel and unusual punishment on plaintiff by wrongfully terminating his jobs, threatening and harassing him, and forcing him to sleep on a bare mattress; (5) intentional and negligent infliction of emotional distress; (6) failure to supervise or intervene in constitutional violations; and (7) the BOP's maintenance of a custom or policy of staff misconduct. Defendants moved for summary judgment or dismissal on a number of grounds (Doc. 54). Plaintiff initially failed to respond.

After the court ordered plaintiff to show cause why the motion should not be granted as uncontested, plaintiff asked for additional time to respond. The court granted his request, and eventually, plaintiff responded with a three-page brief. In that brief, plaintiff generally argues that (1) plaintiff cannot access a legal research database to help him research, but the issues presented by defendants require little argument; (2) plaintiff has exhausted all of his administrative remedies; and

-1-

(3) there are factual disputes in this case that must be resolved. Plaintiff asks the court to incorporate the allegations and evidence from his complaint into his response. But neither plaintiff's complaint nor his response are signed under penalty of perjury, so the court cannot consider plaintiff's allegations as evidence to controvert defendant's submitted evidence. *Cf. Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."). This failure on plaintiff's part is of critical importance. Defendants moved for summary judgment and asserted qualified immunity. This puts a significant burden on plaintiff to offer evidence in support of his claims. Because plaintiff has not done so, the court accepts as true all of defendants' properly-supported facts. Utilizing these uncontroverted facts, the court grants defendants' motion.

**I.     Background**

   *A.     Defendants*

Plaintiff names a number of defendants in his complaint. For ease of reference, defendants, their roles, and their connection to plaintiff's claims are summarized below:

- Defendant Claude Maye: Defendant Maye was the Warden at USP Leavenworth. He prioritized good sanitation in housing units. He was present when plaintiff's cell was searched on two occasions, and met with plaintiff in an effort to resolve issues identified in plaintiff's various administrative remedy requests.

- Defendant D. Baker: Defendant Baker was the Unit Manager at USP Leavenworth. He was involved in the search of plaintiff's cell on January 2, 2014. Defendant Baker met with plaintiff and defendant Maye in late January 2014, in an effort to resolve issues that were the subject of plaintiff's administrative remedy requests.

- <u>Defendant C. Hartley</u>: Defendant Hartley was a Senior Officer who was involved in cell searches as part of her duties. She was present for the January 2, 2014 cell search.

- <u>Defendant D. Howard</u>: Defendant Howard was a Correctional Counselor for the B-Lower Housing Unit at USP Leavenworth. He was not involved in the January 2, 2014 cell search, but plaintiff did approach him in January 2014 to request return of his papers. Defendant Howard told plaintiff he would have to talk to defendant Baker when Baker returned to the institution. The wait was a few days, and then defendant Howard talked with defendant Baker.

- <u>Defendant J. Herbig</u>: Defendant Herbig was a Technician in the Special Investigative Section ("SIS Department") at USP Leavenworth. He processes property confiscated during cell searches. Defendant Herbig reviewed certain items of plaintiff's personal property on January 31, 2014, but that property did not include paper documents or legal materials. Defendant Herbig investigated plaintiff's administrative remedies related to the property seizure and confiscation forms. He met with plaintiff several times, but these meetings usually did not take place in the middle of a work assignment (contrary to plaintiff's unsupported allegation).

- <u>Defendant T. Wagner</u>: Defendant Wagner was a General Foreman at USP Leavenworth. Plaintiff was assigned to work defendant Wagner's work detail from June 7, 2013 through March 31, 2014. When plaintiff began working with defendant Wagner, plaintiff's work performance was appropriate. But eventually, he began exhibiting behavior that reflected less appropriate interpersonal skills. In March 2014, plaintiff was removed from the work assignment because of his work habits and actions.

Defendant Wagner was not aware that plaintiff had filed a significant number of administrative remedies.

- Defendant V. Logan: Defendant Logan was the Supervisor of Education at USP Leavenworth. Plaintiff worked in defendant Logan's department from April 30, 2014 through November 14, 2014, although defendant Logan did not directly supervise plaintiff. On September 30, 2014, defendant Logan wrote an incident report because plaintiff was late to work. The incident report was not false, although the time listed on it was approximate. At the time she wrote the report, defendant Logan was unaware that plaintiff had filed a number of administrative remedies.

- Defendant P. Mitts: Defendant Mitts was a Correctional Counselor at USP Leavenworth, was involved with a disciplinary hearing for plaintiff being late to work on September 30, 2014, and imposed discipline for the incident.

- Defendant Arellano: Defendant Arellano was a Correctional Counselor at USP Leavenworth, was involved with the same disciplinary hearing as defendant Mitts, and imposed discipline for the incident. He documented review of the surveillance video in the institution's computer database, called SENTRY. When describing the time that plaintiff arrived to work, he used the wording "approx.," which is the standard language he uses.

- Defendant Loftness: Defendant Loftness was the Associate Warden at USP Leavenworth. He recalls plaintiff filing a number of grievances and administrative remedies. Defendant Loftness was not personally involved in any of plaintiff's allegations regarding property seizure, retaliation, harassment, access to the courts or administrative remedy process, improper discipline, or termination from work

assignments. Instead, he acted in a supervisory capacity, reviewing claims that plaintiff raised to him personally.

### B. *Facts*

Plaintiff was incarcerated at USP Leavenworth from 2010 through 2016. He alleges that he is entitled to relief for the following incidents. The facts presented below include both properly-supported facts submitted by defendants and unsupported allegations presented by plaintiff. The court presents plaintiff's version of the facts only to give context to his claims. Plaintiff's account lacks any evidentiary support, and therefore is improper for consideration on summary judgment.

- January 2, 2014 Cell Search: Plaintiff had a significant amount of property in his cell, as well as paint on the tile in the cell. Defendant Baker instructed staff to place plaintiff's locked green duffle bags temporarily in a vacant unit team office. The bags appeared to contain papers and books. Plaintiff did not indicate to defendant Baker a need to have immediate access to his legal materials. Defendant Baker gave plaintiff the opportunity to obtain his legal materials the following day, and gave plaintiff all of his personal property back on January 13, 2014.

- January 3, 2014 Transfer: Because of plaintiff's excessive property and alteration of tiles, he was moved to a different cell in B-Lower. Plaintiff makes the unsupported allegation that the transfer was in retaliation for his pursuit of administrative remedies. At this time, however, plaintiff had not yet filed forms relating to the January 2 cell search, and he had only filed two forms overall—compared to over one hundred by the end of 2014.

- January 6, 2014 Property Seizure: Plaintiff claims that numerous items were thrown from his cell to the floor in front of his door. He claims that defendant Baker seized

-5-

other items and refused plaintiff's request for a confiscation sheet. Plaintiff also complains that his administrative remedies were denied for frivolous reasons and without justification. The uncontroverted evidence, however, shows that defendants followed policy in searching and confiscating property, and that they had valid bases for denying administrative remedies.

- <u>January 9, 2014 Complaint about Lack of Access to the Courts</u>: Plaintiff advised defendant Howard that because plaintiff's legal materials were still being stored in the office, his right to access to the courts was being hindered and restricted. Defendant Howard did not return plaintiff's legal materials that day, failed to tell his superiors that defendant Baker had violated plaintiff's constitutional rights, and failed to intervene in the allegedly unconstitutional deprivation.

- <u>January 13, 2014 Return of Property</u>: Defendant Howard returned plaintiff's property. Plaintiff claims without support that this was only because plaintiff told defendant Howard that he was going to file a civil rights complaint. Plaintiff also claims that several items were missing, but that defendant Howard denied his request for a property confiscation sheet. Again, however, defendants have presented evidence indicating that they followed procedure, and that if a confiscation sheet was not given, the reason was justified by policy.

- <u>Late January 2014 Meeting with Defendants Maye and Baker</u>: At this meeting, defendants Maye and Baker attempted to work out problems with plaintiff. They both deny telling plaintiff during the meeting that he should stop using the administrative remedies process. They also deny threatening plaintiff with disciplinary action, transfers, work detail changes, or other methods of retaliation.

- <u>January 30, 2014 Frivolous Rejections, Cell Trashing</u>: Plaintiff visited defendant Baker to retrieve administrative remedies responses. According to plaintiff, his claims were frivolously rejected and had been backdated. He states that defendant Baker refused to give plaintiff forms to appeal the rejections. An hour later, plaintiff claims that his cell was in disarray. He claims that he was targeted, to pressure him into abandoning his requests for administrative remedies. Once again, however, plaintiff's unsupported allegations are countered by defendants' evidence that they followed procedure when denying grievances. They have further submitted affidavits, in which they state that they do not deny or impede the access to the administrative remedy process; they would not retaliate against an inmate for use of the process; and they are not concerned if an inmate chooses to use the administrative remedy process. Against this evidence, plaintiff's unsupported claims cannot be assumed true.

- <u>January 31, 2014 Meeting with Defendant Herbig</u>: Plaintiff claims that defendant Herbig gave him an ultimatum: dismiss his administrative complaints or forfeit all commissary items taken on January 30, 2014. Plaintiff claims that he was intimidated into "donating" his property, and that defendant Herbig used "Gestapo-like tactics" to instill fear and suppress plaintiff's grievances. Defendant Herbig denies these allegations by affidavit.

- <u>March 19, 2014 Meeting with Defendant Herbig</u>: Plaintiff claims that defendant Herbig was irate because of one of plaintiff's complaints directed at defendant Herbig. According to plaintiff, defendant Herbig threatened him and instructed another officer to take plaintiff's personal property from his cell, resulting in another seizure. These unsupported claims, like the others, are in contradiction to defendant Herbig's sworn

statements that he followed protocol, did not threaten plaintiff with cell searches or loss of his job, was not involved with decisions related to plaintiff's work assignment, and did not intimidate plaintiff for using the administrative remedy program or retaliate against him.

- <u>March 31, 2014 Termination from Work Detail</u>: Plaintiff's work habits and actions resulted in his termination from defendant Wagner's work detail. Plaintiff's unsupported version of his termination, however, is different. According to plaintiff, defendant Herbig intentionally made plaintiff repeatedly miss work (as another act of retaliation and intimidation related to plaintiff's grievances), which made defendant Wagner unhappy with plaintiff.

- <u>September 30, 2014 Incident Report and October 2, 2014 Disciplinary Hearing</u>: Defendant Logan reported that plaintiff was late to work on September 30, 2014. Defendant Mitts and Arrellano reviewed the surveillance video of plaintiff arriving to work on September 30. They found that he had arrived at 7:53 a.m. when he was supposed to arrive at 7:30 a.m. In accordance with policy, they imposed progressive discipline. Plaintiff, on the other hand, claims (without evidentiary support) that the incident report written by defendant Logan was untrue.

- <u>November 14, 2014 Termination from Education Department</u>: Plaintiff's work with the Education Department was terminated because of his deteriorating behavior. (Of course, plaintiff believes it was in continued retaliation for his pursuit of administrative remedies.)

## II. Legal Standards

Defendants move for dismissal or summary judgment in the alternative. The court considers evidence outside of plaintiff's complaint, and therefore will treat defendants' motion as one for summary judgment.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)). On the other hand, a plaintiff's pro se status does not relieve him from complying with this court's procedural requirements. *Barnes v. United States*, 173 F. App'x 695, 697 (10th Cir. 2006) (citations omitted); *see also Santistevan v. Colo. Sch. of Mines*, 150 F. App'x 927, 931 (10th Cir. 2005) (holding that a pro se litigant must follow the same rules of procedure as other litigants). As noted previously, plaintiff's response includes no admissible evidence or support for his allegations, and the court therefore evaluates the merits of defendants' motion based solely on the evidence presented by defendants.

## III. Discussion

### A. *Exhaustion*

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), requires that inmates exhaust available administrative remedies before filing a lawsuit about prison conditions. *See Porter v. Nussle*,

534 U.S. 516, 532 (2002). Here, plaintiff has exhausted his available administrative remedies for the following claims:

- January 2, 2014 property confiscation, including legal materials;
- Failure to return bed sheets after January 2, 2014 confiscation;
- January 6, 2014 property confiscation;
- Retaliatory cell reassignment;
- Defendant Maye's alleged false statement in correspondence;
- Denial of access to legal materials and the court;
- Retaliation by staff, the January 30, 3014 meeting with defendants Maye and Baker, and a refusal to provide administrative remedy forms;
- Retaliation by defendant Herbig, including a threat of job loss;
- Failure of defendant Loftness to file complaints;
- Being disciplined for being absent from work assignment; and
- Termination from work detail assignment in the Education Department.

Plaintiff stated in a conclusory fashion that he has exhausted administrative remedies for all of his claims. But he makes no specific showing, and does not properly controvert defendants' factual statement that is supported by the record. The court therefore determines the above-claims are the only ones plaintiff has exhausted. To the extent that he attempts to bring claims for denial of due process, other cell searches, or reassignment and his loss of job in Facilities, such claims are barred for failure to exhaust.

### B.   *Bivens Claims Against the United States and Individuals in Official Capacities*

Plaintiff brings this suit against the BOP and the ten named defendants in their official and individual capacities. For the following reasons, the BOP claims and those against defendants in their official capacities are improper and barred by sovereign immunity.

Plaintiff brings his claims against the ten named defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, which provides a cause of action in some cases of constitutional violations by federal agents and employees.[1] 403 U.S. 388, 397 (1971). But "[w]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996) (citation omitted) (emphasis omitted). "There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).

When plaintiffs charge federal officials for wrongdoing while acting in their official capacity, the charges operate as claims against the United States and not the individual defendants. *See, e.g.*, *id.* at 959, 963 (barring a prisoner's action against the warden and prison psychologist who were acting in their official capacities). The United States is immune to suit unless sovereign immunity has been waived. *Atkinson v. O'Neill*, 867 F.2d 589, 590. The United States has not waived its sovereign immunity for constitutional torts. *See DeHaan v. United States*, 3 F. App'x 729, 731 (10th Cir. 2001). The doctrine of sovereign immunity therefore bars plaintiff's constitutional claims against the United States, including the BOP as a federal agency and defendants in their official capacities.

---

[1] Plaintiff's claim for negligent and intentional infliction of emotional distress is not an appropriate subject for a *Bivens* action, and the court dismisses that claim. *See Hachmeister v. Taylor*, No. 3205-SAC, 2014 WL 547066, at *6 (D. Kan. Feb. 11, 2014).

### C. *Supervisory Liability*

Plaintiff sues defendants Maye and Loftness for failing to properly supervise or intervene in the unconstitutional actions of other staff. Plaintiff also claims that defendant Howard failed to intervene in the constitutional violations of defendant Baker. For the reasons stated below, the court determines that the actions of staff were constitutional, which means that plaintiff's claims for failure to supervise or intervene are not viable.

### D. *Qualified Immunity*

The court next turns to the *Bivens* claims against the prison officials in their individual capacities. Qualified immunity protects government officials from individual liability under *Bivens* unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting that qualified immunity analysis is identical under 42 U.S.C. § 1983 and *Bivens*). When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue. *Schroeder*, 311 F. Supp. 2d at 1250. At this point, the burden is on the plaintiff. *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000).

The court may consider either prong of the qualified immunity test first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the court will first determine whether plaintiff has shown that defendants violated the Fourth, Fifth, First, or Eighth Amendments, as well as claims of retaliation for exercising his First Amendment Rights.

        1.     Fourth Amendment – Cell Searches

Plaintiff claims that defendants Maye, Baker, Hartley, Herbig, and others violated his Fourth Amendment rights by searching his cell. But "prisoners are not protected under the Fourth Amendment from unreasonable searches of their prison cells or from the wrongful seizure of property contained in their cells because 'the Fourth Amendment does not establish a right to privacy in prisoners' cells.'" *Rodriguez-Rodriguez v. United States*, 4 F. App'x 637, 639 (10th Cir. 2001) (quoting *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995)). Because the searches did not violate the constitution, defendants are entitled to qualified immunity on this claim.

### 2. Fifth Amendment – Property Seizure

Next, plaintiff claims that defendants Maye, Hartley, Baker, Herbig, and others violated the Fifth Amendment by confiscating his personal property, including legal materials, business plans, patent applications, a manuscript, and more. But if a meaningful post-deprivation procedure is available, negligent and intentional deprivations of property do not violate the Fifth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Jackson v. Wilkinson*, 671 F. App'x 717, 718 (10th Cir. 2016). Defendants have identified a number of post-deprivation remedies available to plaintiff, including the FTCA and Small Claims Act process, as well as prison policies for handling property confiscation. *See Muhammad v. Finley*, 74 F. App'x 847, 848 (10th Cir. 2003); *Akervik v. Ray*, 24 F. App'x 865, 869 (10th Cir. 2001). Plaintiff has not adequately shown a constitutional violation, and defendants are entitled to qualified immunity on this claim.

### 3. First Amendment – Access to Courts

Plaintiff's third claim is against defendants Maye, Hartley, Baker, Howard, and Herbig, for violating plaintiff's First Amendment right of access to the courts. Plaintiff claims that these defendants deprived him of his legal materials for two weeks and/or destroyed them. According to

-13-

plaintiff, he was unable to pursue a civil rights case or argue against a sentencing enhancement in a collateral attack on his federal criminal conviction.

Violations of the constitutional right of access to the courts require a showing of injury due to the deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). There must be prejudice. *Sterling v. Edwards*, 881 F. Supp. 488, 490 (D. Kan. 1995). Plaintiff has not made this showing. In his criminal case, plaintiff received the relief that he sought. Plaintiff also has not adequately shown injury in his civil case. He voluntarily withdrew his complaint after being warned as early as October 2013 that many—if not all—of his claims may be barred by res judicata or dismissed on other grounds. Plaintiff's access to his legal materials was only for a temporary time of eleven days. And defendants indicate that if plaintiff had advised of an immediate need for access to legal documents, they would have allowed him to access the materials. Again, plaintiff failed to show a constitutional violation.

### 4. Retaliation for Filing Administrative Remedies

Plaintiff also argues that defendants retaliated against him for exercising his right to file administrative grievances. Retaliation for using the prison grievance process is impermissible. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). But to avoid the bar of qualified immunity, plaintiff must show that defendants' actions were substantially motivated by his exercise of constitutionally-protected activity. *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff claims that the following acts were taken in retaliation for his grievance activities: cell searches, cell moves, interviews by investigative staff, job loss, discipline, and administrative remedy rejections. These allegedly-retaliatory actions occurred in relatively close proximity to plaintiff's protected activities. Temporal proximity alone, however, is insufficient to demonstrate causation for a retaliation claim. *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010).

    *a.*  *Cell searches*: There is no evidence that the cell searches resulted from retaliatory motives. To the contrary, the evidence shows that the cell searches were conducted pursuant to policy and procedure intended to maintain security and sanitation.

    *b.*  *Cell Move*: Plaintiff's January 3, 2014 cell move was prior to any administrative remedy filings related to his January 2 cell search. The uncontroverted evidence shows that defendants moved plaintiff because of his excessive property and the markings on the wall tiles.

    *c.*  *Defendant Herbig's Interviews*: The uncontroverted evidence indicates that defendant Herbig was assigned to investigate some of plaintiff's administrative remedies. He interviewed plaintiff less than five times, usually at the beginning of the work day to avoid disruption. There is no evidence to suggest that defendant Herbig scheduled these interviews with retaliatory motive.

    *d.*  *Work Detail Assignment Changes*: There is no constitutional property or liberty interest in prison employment. *Ingram v. Papalia*, 804 F.2d 595, 596–97 (10th Cir. 1986) (citations omitted). Plaintiff's claim about his job termination is foreclosed. In any event, the uncontroverted evidence shows that defendant Wagner terminated plaintiff for inappropriate behavior and for storing numerous books (for personal use) at the work site. Defendant Wagner also stated by affidavit that she was not aware that plaintiff had filed a number of grievances.

    *e.*  *Defendant Logan's Incident Report*: Plaintiff may not challenge the content of defendant Logan's incident report because it is a matter of prison discipline. The disciplinary conviction has not been invalidated, and plaintiff may not seek to overturn it through this court. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). In any event, the uncontroverted evidence shows that defendant Logan did not falsify the incident

report about plaintiff arriving late for work. Defendants Mitts' and Arellano's review of the surveillance video and disciplinary findings are likewise not subject to challenge.

    *f.* *Rejection of Administrative Remedies*: Finally, defendants' uncontroverted evidence shows that any administrative remedies that were rejected were done so in accordance with policy. The Administrative Remedy Coordinator stated that the majority of plaintiff's administrative remedies were, in fact, not rejected. And plaintiff was generally allowed to correct and refile submissions if possible. There is no evidence to suggest that any grievances were denied for retaliatory reasons.

    *g.* *Summary – Retaliation*: Because plaintiff has not presented any admissible evidence of retaliation, he is unable to show a constitutional violation. Plaintiff has not shown that defendants' actions were substantially motivated by his exercise of constitutionally-protected activity. The court therefore grants qualified immunity on these claims.

  5. <u>Eighth Amendment Cruel and Unusual Punishment</u>

Finally, plaintiff generally claims that defendants' treatment of him constituted cruel and unusual punishment. He also alleges that he had to go one night without bedding, which was a violation of the Eighth Amendment, as well.

The "Eighth Amendment requires that prison officials 'provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable steps to guarantee the inmates' safety.'" *Brewer v. Gilroy*, 625 F. App'x 827, 833 (10th Cir. 2015) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 874 (10th Cir. 2001)). There are objective and subjective components to establishing deliberate indifference based on inhumane conditions of confinement.

Objectively, the deprivation alleged must be sufficiently serious—i.e., the challenged action must deny plaintiff the minimal civilized measure of life's necessities. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Comfortable prisons are not required by the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998). Any deprivation must be extreme. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Subjectively, the prison official must have acted with "'deliberate indifference' to inmate health or safety." *Id*. at 834. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837.

Plaintiff's claims that harassment and retaliation constituted cruel and unusual punishment lack merit. First, they are unsupported. Second, the general claims of harassment and retaliation do not involve cruel or inhumane prison conditions. And third, even if they were supported by evidence, they do not rise to the objective level of an extreme deprivation. Likewise, plaintiff's more specific complaint that he slept one night without bedding is insufficient to show an Eighth Amendment violation—even if it were supported by evidence. Defendants are also entitled to qualified immunity for this claim because plaintiff does not show a constitutional violation.

**IT IS THEREFORE ORDERED** that defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc 54) is granted.

The case is closed.

Dated this 28th day of June, 2017, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
